UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 21-23436-CIV-MORENO

JACOB MILLNER,

        Plaintiff,

vs.

PLUTUS ENTERPRISES, LLC, FLOYD
SCOTT AGEE, JR., STEFAN DESSALINES,
7th LEVEL COMMUNICATIONS, LLC, and
DON GILLETTE,,

        Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS

Plaintiff, Jacob Millner, alleges he is a victim of a pyramid scheme perpetrated by the Defendants. Plaintiff filed an Amended Complaint asserting claims under the Racketeer Influenced and Corrupt Organizations Act and the Florida Deceptive and Unfair Trade Practices Act. Defendant 7th Level Communications, LLC moves to dismiss arguing a lack of personal jurisdiction and failure to state a claim under RICO and the FDUTPA. The Court denies the motion finding that RICO provides for nationwide service and therefore, there is personal jurisdiction over the Defendant. The Amended Complaint also pleads the RICO and fraudulent inducement claims with sufficient particularity. It lays out the role of each defendant and what each defendant did and said to further the unlawful pyramid scheme. Finally, the Amended Complaint states a claim under the Florida Deceptive and Unfair Trade Practices Act. Accordingly, the motion to dismiss is denied.

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss **(D.E. 26)**, filed on **February 3, 2022**.

THE COURT has considered the motion, the response, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED. Defendant 7th Level Communications, LLC shall answer the complaint by **June 30, 2022**.

## I. Background

Plaintiff, Jacob Millner, filed this case against various Defendants, including 7th Level Communications, LLC, for its role in an unlawful pyramid scheme. 7th Level filed a motion to dismiss the Amended Complaint. The Amended Complaint alleges that the scheme, known as OPM Wealth, preyed on individuals seeking to gain financial independence by making false, fraudulent, and deceptive promises of exponential income generation to unsuspecting victims interested in cryptocurrency.

Defendants Floyd Scott Agee, Jr. and Stefan Dessalines established OPM Wealth, which was a multi-level marketing business where revenue was derived from investment of cryptocurrency by subsequent participants. OPM Wealth operated a pyramid scheme selling various membership levels of its Plutus Plan. Defendant 7th Level Communications, LLC was the principal marketing and sales team orchestrating the ongoing fraud carried out by OPM Wealth. Defendant Don Gillette, a resident of Miami, Florida, was an affiliate and promoter of OPM Wealth and targeted unsuspecting individuals with false text messages and phone calls to lure them into the scheme.

The Amended Complaint explains that OPM Wealth offered to consumers a digital franchise with digital products, including know-how on generating cryptocurrency wealth. Patrons would pay an initial buy-in valued at tens of thousands of dollars, but the only way to make money through the OPM Wealth program was by luring others into the program and earning commissions when they purchased plans. Plaintiff alleges he and all other investors lost

their investment. 7th Level Communications allegedly provided the direct sales representatives, who were referred to as coaches. Once a potential victim became entrapped, 7th Level would pair the individual with a coach, whose job was to close the sale. Plaintiff also alleges that 7th Level Communications legitimized OPM Wealth based on its owner Jeremy Miner's purported sales acumen and relationship with existing companies, like Google. Miner and his team also posted videos enticing victims to buy the Plutus Plan.

On or about April 6, 2020, Gillette, as an agent of OPM Wealth, directly contacted Plaintiff to promote the scheme, claiming he earned $146,400 within 7 weeks. Over the next few weeks, Plaintiff was pressured and inundated with fraudulent promises from Agee, Dessalines, and the 7th Level coach. He relied on the coach's representations to finalize his decision to participate. Plaintiff purchased OPM Wealth's most expensive plan, the "Zeus Package" for a total of 4.1985 Bitcoin, which has a value of over $170,000. Plaintiff never received any digital or physical products promised under the plan. Plaintiff never closed any deals for the scheme and did not make any money.

A. Causes of Action in the Amended Complaint

Count 1 of Plaintiff's Amended Complaint is a RICO claim under 18 U.S.C. § 1962(c) against all Defendants. In this claim, Plaintiff explains how the Defendants conducted the affairs of a racketeering enterprise. Specifically, 7th Level Communications provided sales staff to promote the fraudulent scheme. The company touted 7th Level's "Done For You Closing Team" as a key component to the investors' success from the program. 7th Level participated in media interviews and marketing videos to promote the plan and its "coaches" were the direct liaisons to the victims. The coaches made false and deceptive representations to the victims, including the Plaintiff. Plaintiff alleges that the Defendants conducted the affairs of a racketeering enterprise by violating 18 U.S.C. § 1343 by using the wire, radio, and television communication to devise a

scheme to defraud victims. The complaint also alleges they violated 18 U.S.C. § 1956 by laundering the proceeds of their illegal activity by knowingly concealing the nature, the location, and the source of the proceeds of their illegal activity. Finally, the Amended Complaint alleges in Count 1 that Defendants violated 18 U.S.C. § 1957 by knowingly engaging in monetary transactions in criminally derived property of a value greater than $10,000 stemming from their illegal activity.

Count 2 is also a RICO claim under 18 U.S.C. § 1962(d) for conspiracy to conduct the affairs of a racketeering enterprise. The claim asserts that all Defendants intentionally conspired to engage in a racketeering activity in connection with OPM Wealth. It alleges that the Defendants knew their predicate acts formed a pattern of racketeering activity and agreed to perform those acts to perpetuate the scheme.

Count 3 is a Florida RICO claim against all Defendants under § 772.103, Fla. Stat. The claim asserts the illegal predicate acts that took place in Florida, including organized fraud in violation of § 817.034(4)(a), Fla. Stat., communications fraud in violation of § 817.034(4)(b), Fla. Stat. and theft, in violation of § 812.014(1).

Count 4 is a claim under the Florida Deceptive and Unfair Trade Practices Act, § 501.201-501.213, Fla. Stat. The Amended Complaint alleges that the deceptive trade practices caused Plaintiff to transfer his Bitcoin to OPM Wealth for investment returns and property that was not delivered.

Count 5 is a fraudulent inducement claim under Florida law against all the Defendants. It asserts that Defendants intended Plaintiff to be induced to invest by relying on their statements of fact to him, which were false and deceptive. Plaintiff alleges that he suffered damages because he relied on their fraudulent statements.

Defendant 7th Level Communications filed a motion to dismiss arguing that the Court lacks personal jurisdiction. 7th Level Communications is a Missouri limited liability company with its principal place of business in Missouri and its only member, Jeremy Miner, is a citizen of Phoenix, Arizona. In its motion to dismiss, 7th Level also argues that Plaintiff fails to properly state claims under the federal and Florida RICO statutes and the Florida Deceptive and Unfair Trade Practices Act.

## II. Legal Analysis

### A. Motion to Strike

Before addressing the merits of the motion to dismiss, the Court finds 7th Level's motion to strike the Amended Complaint should be denied. In this case, the Court granted a prior motion to dismiss filed by Defendant 7th Level Communications, when Plaintiff failed to file an opposition memorandum within the time allotted in Local Rule 7.1(c)(1). After the Court's order granting that motion, the Plaintiff filed a timely Amended Complaint as allowed by Federal Rule of Civil Procedure 15(a)(1)(B). In this case, Plaintiff never intended to "oppose" the motion to dismiss and thus, was not required to file a response under the Local Rule. Moreover, Federal Rule of Civil Procedure 83 "requires a district court's local rules to be consistent with the Federal Rules of Civil Procedure." *Reese v. Herbert*, 527 F.3d 1253, 1266 n. 20 (11th Cir. 2008). The Court will not construe 7.1(c)(1) in a manner that is inconsistent with Federal Rule of Civil Procedure 15(a)(1)(B), which allows the filing of an amended complaint 21 days after service of a motion under Rule 12(b). Accordingly, the motion to strike is denied and the Court vacates its prior dismissal order as to Defendant 7th Level Communications, LLC.

### B. Personal Jurisdiction

In its motion to dismiss, Defendant 7th Level Communications argues that there is no personal jurisdiction because there is no specific jurisdiction under Florida's Long Arm Statute

5

or a federal statute. Plaintiff asserts that because it brings claims under the federal RICO statute, the analysis under Florida's Long-Arm Statute is misplaced. This Court agrees with Plaintiff. RICO provides for nationwide "venue and process" under 18 U.S.C. §1965 of the RICO statute. The Eleventh Circuit held that "[w]hen a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *See Republic of Panama v. BCCI Holdings, (Lux.), S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). Section 1965(d) provides for service in any judicial district where a defendant is found, and it is the source of personal jurisdiction over 7th Level in this case, not Florida's long-arm statute as it contends. District courts have repeatedly ruled consistently with *Republic of Panama* holding the nationwide service of process provision can be used to exercise personal jurisdiction over federal RICO defendants. *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1373 (S.D. Fla. 2014) (stating that where personal jurisdiction is established under the federal RICO statute, courts may exercise pendent personal jurisdiction over the related state law claims); *BankAtlantic v. Coast to Coast Contractors*, 947 F. Supp. 480, 484 (S.D. Fla. 1996) (stating that because RICO provides for nationwide service of process, it is the statutory basis for personal jurisdiction in a RICO action, not Florida's long-arm statute). In its reply brief, Defendant 7th Level Communications concedes this point, as it must.

Rather, 7th Level Communications argues in reply that due process considerations are not met. It argues that there is no nationwide class, and Plaintiff is not from Florida. Only Defendant Gillette is in Florida and none of the alleged conduct as to Plaintiff occurred in Florida.[1] 7th Level adds that Plaintiff has never even been within the territorial boundaries of Florida, and therefore, exercising personal jurisdiction here is unreasonable. Under RICO's nationwide service of process provision, a defendant is only required to have minimum contacts with the

---

[1] The Amended Complaint alleges that Defendant Don Gillette targeted Plaintiff from Florida.

6

United States as a whole to satisfy due process and enable a court to exercise personal jurisdiction over such defendant. *Prou*, 62 F. Supp. 3d at 1372-73. There is no requirement that a defendant establish minimum contacts with the forum district itself, but rather, a defendant's presence within the United States satisfies any due process concerns where nationwide service of process is authorized. The only caveat to this general rule is that if a defendant satisfies its "burden of demonstrating that assertion of jurisdiction in this forum will make litigation 'so gravely difficult and inconvenient' that he will be at a 'severe disadvantage in comparison [to Plaintiff]," which 7th Level has not attempted to do here. *Republic of Panama*, 119 F.3d at 948.

Here, Plaintiff has established a prima facie case of personal jurisdiction against 7th Level. The Amended Complaint identifies 7th Level as a Missouri limited liability company and Jeremy Miner, its owner and sole member, was served in Arizona. The Amended Complaint seeks relief from 7th Level's wrongful conduct under RICO and identifies § 1965 as the basis of jurisdiction of its claims. Pursuant to RICO's nationwide service of process provision, 7th Level, as a company residing in the United States, has sufficient minimum contacts with the United States to satisfy constitutional due process requirements and thus, is subject to the personal jurisdiction of this Court. *See* 18 U.S.C. § 1965(d); *see also BankAtlantic*, 947 F. Supp. at 488 ("[A] defendant's mere presence within the United States establishes 'minimum contacts' and satisfies any due process concerns that may exist where nationwide service of process is authorized.").

### C. *RICO and Fraudulent Inducement Claims*

Defendant moves to dismiss the RICO and fraudulent inducement claims under Federal Rule of Civil Procedure 9(b) for failure to plead fraud with specificity. The Eleventh Circuit has repeatedly stated that Rule 9(b) is satisfied where a plaintiff alleges "precisely what statements

were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and the (3) content of such statements and the manner in which they misled the plaintiff, and (4) what the defendant obtained as a consequence of the fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (citing *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007) and quoting *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). Under "Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro*, 544 F.3d at 1237.

The Amended Complaint meets Rule 9(b)'s heightened pleading standard. Plaintiff has identified 7th Level, both individually and collectively with other Defendants, to have targeted Plaintiff through deceptive marketing materials and through agents acting on its behalf to fraudulently misrepresent to Plaintiff, the purpose, performance history, products of the OPM Wealth scheme and, more importantly, Plaintiff's ability to make substantial, immediate passive income from his purchase of a Plutus Plan franchise level. The Amended Complaint also identifies Jeremy Miner as a key developer and promoter of the false, fraudulent, and deceptive advertisement materials and the organizer and orchestrator of the "coaches" supplied by 7th Level, who were, in reality, the closing agents that spoke directly with victims, including Plaintiff. 7th Level coaches made false and deceptive statements and representations about the scheme to attract victims, including Plaintiff, into buying into the program. The Amended Complaint also states that a 7th Level coach was appointed to assist the Plaintiff and mischaracterized the true nature of the scheme. As to the timeframe, the Amended Complaint

assert that 7th Level inundated the Plaintiff with marketing materials and verbal promises beginning on April 6, 2020 to May 6, 2020. Finally, the Amended Complaint provides screenshots of charts and graphics that 7th Level, in conjunction with other defendants, posted online to target victims. The Court finds this is sufficiently pled.

Plaintiff argues that the Amended Complaint improperly lumps the Defendants together. This Amended Complaint is not a shotgun pleading, which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). This is not the type of pleading that fails to give the defendants adequate notice of the claims or the grounds upon which each claim rests. Rather, the Amended Complaint states allegations as to each defendant, and specifically sets forth 7th Level's role in the scheme. Accordingly, the Court does not find the Plaintiff improperly lumps the defendants together.

Defendant also argues that Plaintiff fails to plead the RICO conspiracy claim with particularity. District courts in this circuit have specifically held that "Rule 9(b)'s particularity requirement does not apply to RICO conspiracy claims." *In re Sahlen & Assocs., Sec. Litig.*, 773 F. Supp. 342, 370 (S.D. Fla. 1991) (citing *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989)). Where the allegations, read in their totality, clearly suggest that such an agreement to conspire was made, the particularity requirements do not apply. *Id.*

Here, Plaintiff alleges that 7th Level conspired with the other Defendants to further a racketeering enterprise. Specifically, the Amended Complaint alleges OPM Wealth hired 7th Level to promote the plan through its team of coaches, who were focused on closing deals with

unsuspecting victims of the pyramid scheme. Accordingly, the Court denies the motion to dismiss and finds the Amended Complaint sufficiently states a claim for RICO conspiracy.

### C. Florida's Deceptive and Unfair Trade Practices Act

7th Level moves to dismiss the Florida Deceptive and Unfair Trade Practices Act claim arguing there is not a sufficient connection to Florida. In so arguing, 7th Level acknowledges that Florida courts have found that the Florida Deceptive and Unfair Trade Practices Act is not limited to providing relief to Florida consumers, nor is it limited to conduct occurring entirely within the state. *See Millenium Comm'ns & Fulfillment, Inc. v. Office of Attorney Gen. of Fla.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) (finding that the FDUTPA applies to non-resident consumers); *Barnext Offshore, Ltd. v. Ferretti Grp., USA, Inc.*, No. 10-23869, 2012 WL 1570057, (S.D. Fla. May 2, 2012) (recognizing that there are no geographical or residential restrictions contained in the express language of the statute and denying summary judgment on a FDUTPA claim because some of the activity occurred outside of Florida).

The Florida Deceptive and Unfair Trade Practices Act is intended "[t]o protect the consuming public and legitimate enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," *Barnext*, 2012 WL 1570057, at *5 (quoting Fla. Stat. § 501.202). Florida Statute § 501.203 defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale. . . or otherwise, of any good . . .*wherever situated*." *Id.* (quoting Fla. Stat. § 501.203 (emphasis added)). The Act is "designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87, 89 (Fla. 2d DCA 2003).

Although Florida law allows for a broad interpretation of the act, 7th Level nevertheless argues the claim should be dismissed because there is an insufficient connection to Florida. Even

if the Court gave FDUTPA the more limited reading that 7th Level suggests, the Amended Complaint alleges that 7th Level engaged with Florida-based Defendant Don Gillette and the other Defendants in deceptive and unfair trade practices. Don Gillette targeted Plaintiff from Florida. These allegations are sufficient to state a claim under the Act and therefore, the Court denies the motion to dismiss.

DONE AND ORDERED in Chambers at Miami, Florida, this 22nd of June 2022.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record